Smith, J.
The action below was one brought by Kelly against the Railroad Company to recover damages which the plaintiff claimed he had suffered by reason of the negligent, careless, improper and unlawful conduct of the defendant, in running a train of cars over and against two wagons of the plaintiff, each drawn by two of his mules, which, without fault on his part, were standing, (the wagons were being unloaded), on Front street in this city. The answer denies all these averments.
*342 On the facts as disclosed in the bill of exceptions; we are of the opinion:
First. That there was gross negligence in the management of the train of the defendant Company by its agents, before and at the time that the teams and wagons-of the plaintiff were struck by it. It was quite a dark night, about 6 p. m. on February 27, 1890, though the street was well lighted, and on which street the servants of the Company might reasonably have expected to find many people- and vehicles, even at that hour- — and yet a freight train of' from eight to twelve cars was backed along such street at a rapid rate. One of the witnesses, and perhaps the only one-who attempted to fix the rate of speed, estimated it at twelve-miles per hour, but this we think was an overestimate, and1 that the rate of speed was from six to eight miles per hour, which was faster than the ordinance of the city allowed them-to go. Several of the employes, of the company stood on the first car which was being backed up from the east to the-west — one of whom carried a light in a lantern, presumably to signal the enigneer on the locomotive, which was at the-east end of the train, but no signals appear to have been given to him. But in addition to this rapid speed, under these-dangerous circumstances, it clearly appears that the driver of one of the plaintiff’s teams, who was unloading tobacco-from the wagon, backed up to the curb-stone, seeing the-train approaching about a square and a half east of where-he was, made an instant effort to get his team off the track;, but seeing that he could not do so, owing to obstructions in. the street, ran at full speed to meet the approaching train,, calling to the men on the first car tc stop the train. They saw him and heard his cries at such a distance from the team* as would probably have enabled them to stop before reaching it, but they made no effort to do so, but called to the-driver to get off the track, and did not use any means to-stop the train until they came so near, as one of them says,. *343 that he could see the team on the track, and then tried to stop the train, but it was too late. This was not only negligence on their part, but it strongly tended to show such gross negligence as amounted to willfulness.
Second. Whether there was contributory negligence on the part of the servants of the plaintiff, which, if the injury had been caused by mere negligence on the part of the defendant, should have prevented a recovery by the plaintiff, was a question which fairly arose in the case, and there was evidence which looked both ways. But if the act of the defendant was so grossly negligent as to amount to willfulness, as the evidence tended' strongly to prove, and the injury might have been avoided by the defendant notwithstanding the negligence of plaintiff’s servants, the defendant would still be liable. The servants of the defendant, after receiving notice of the danger, and having the ability to avoid the injury, must do so. We would not therefore hold that the action of the court in- refusing to direct a verdict for the defendant, or to grant the motion for a new trial on the ground that the verdict was contrary to the evidence, was erroneous.
Third. Counsel for plaintiff in error take exception to some of the statements of the court in the charge given to the jury, and to the failure to state some propositions of law,which it is claimed he should have called their attention to. As to the last point, the rule is clear that if anything was omitted by the trial judge in his charge, which in the opinion of counsel should have been said, the attention of the court should have been called to it, and a charge requested on such' points. We think, too, that the charge as given to the jury was substantially correct. It is urged that it was wrong in its statement as to the measure of damages, the contention of counsel for plaintiff in error being that if the plaintiff below was entitled to a verdict, he could only recover the difference1 *344 between the market value of the property injured immediately before, and immediately after the injury.
The court, in effect, charged that if the mules of the plaintiff were injured by the collision, that the plaintiff was authorized to use reasonable means to restore them, and if he did, that he could recover the difference between their value just before they were hurt, and their value when so restored, together yyith the amount fairly expended in healing them,, and the value of their use to him during the time they were being cured, if he was thereby deprived of such use.
The question thus presented is an interesting one, and as to which there seems to be a conflict in the authorities. We think it clear though that the rule as claimed by counsel for plaintiff in error is not the correct one. There is some question whether the correct rule is not as stated in Hughes v. Quinlin, 3 Carrington & Payne, 703: “the proper measure of damages is the keep of the horse at the farmer’s, the farmer’s bill, and the difference between the value of the horse at the time of the accident, and at the end of the six weeks. ”
It will be seen that this rule differs from that given by the trial court in this case, in this, that it allows as an element of damage, the keep of the animal, and denied the amount of the hire of another horse during the six weeks,. while the court of common pleas said that the loss of the use might be considered, but said nothing as to the keep of the mules during this time.
The rule as stated in Sedgwick on Damages in such cases, where the injury is less than destruction, is this:— “Section 435. So where the plaintiff’s property was injured, he may recover the expense of restoration of the property to health or soundness, compensation for the loss of use of it during the period of disability, and the amount of the difference, if any,between its value before the injury, and after the cure or repair.” This seems to us a reasonable and just *345 rule, and is precisely the one stated by the trial judge in this case.
Fourth. The court was asked to give to the jury the special charges numbers 1, 2, 5 and 6, and declined to do so. Number 1, requested the court to charge that the jury should return a verdict for the defendant. This we have held was properly refused. Numbers 2 and 6 we think stated the general principles of law correctly, and should have been given,except for the statement at the close of each that if the jury so found, the verdict must be for the defendant. That' is, in effect, the court was asked to say, that if the servants ®f the plaintiff were negligent, and thus contributed to the injury, there could be no recover}7 in any event — thus ignoring the evidence in the case which tended, at least, to show willfulness on the part of the servants of the defendant, and the rule of law which then arises, of which we have before spoken. For this reason we think the court did not err in refusing to give these charges.
Number 6, as asked for, was as follows: “There is testimony which tends to show that the trains were in -the habit of running upon that track, at the point of the alleged injury before 7 o’clock in the evening, to the knowledge of these' drivers. If so, Isay to you that they had no right to assume-that no train would run before 7 o’clock in the evening, and' their duty was to keep constantly on the look-out for trains. ’’
There may or may not have been such evidence as the' court was asked to say there was. If there was not, the’ court properly refused to say there was. The ordinance prohibited such running before 7 o’clock, and it is questionable1 whether the evidence tended to show that it was violated before to the knowledge of both of the drivers. But if it did tend to show this, it does not follow that the court should assume it to be true, instead of leaving it to the jury to find' whether such whs the case, or to instruct them, as matter of law, that it was then incumbent on them to keep a constant look-out *346 for trains. This would be stating ■ the law too strongly ¡against the plaintiff.
Ramsey, Maxwell & Ramsey, Attorneys for Plaintiff.
Mallon) Coffey & Mallon, Attorneys for Defendant.
Fifth. The court did not err in refusing to direct the jury to return answers to certain interrogations, desired by defendant. This was a matter in the discretion of the court, and was not abused.
The judgment will be affirmed, with costs.
(Judgment affirmed by Supreme Court without report, November 12, 1895. 34 Law Bulletin, 262.)